May it please the Court, I'm Mark McCormick, representing Jaco Van Maanen in this appeal. I would like to reserve five minutes for rebuttal, if I may. Keep an eye on the clock there. Pardon me? I say keep an eye on the clock. I'll do that, thank you. As you know, this is a diversity case. It's a civil case. It's a personal injury action. Jaco is a citizen and resident of the Netherlands. He got involved, he's a college graduate, got involved in developing an interest in taking a course in the Netherlands of the defendant, University of the Nations, which was a discipleship training course, which generally was a basic course with a religious emphasis that was designed for young people interested in a worldwide movement. Let me get right to the real issue is whether he relied on the fact that the University of Nations, but for that he would not have gone. Does the record show that your client knew, is it YWAM, is that, is the parent organization of the University of Nations? It isn't a parent organization. It is the founding body that established University of the Nations, according to the University of the Nations catalog, where it recites the history in the early pages of the catalog. I think it's pronounced E-WAM. E-WAM, all right. Are you indicating that it didn't necessarily think that the University of Nations was the parent organization of the university? No, Your Honor. The essence of the evidence of his reliance on the University of the Nations role in the school that he enrolled in was his statement that it was important to me that the SOAR course, which was this outdoor wilderness course that he signed up for at Bishop California, was a course that was part of the University of the Nations and part of the E-WAM. So the district court said your client consistently testified that he was looking for E-WAM courses and that what was important to him was that it was an E-WAM course. And so opposing counsel said the University of Nations catalog was really nothing more than like a Yellow Pages to direct him to where E-WAM courses were. He didn't rely on the University of Nations' venerable name like in the Colwell Banker case or in the Arthur Murray case. He was just looking for a directory. And that's what the district court held as well. Why shouldn't we go along with that? There's certainly a jury question as to whether he relied on the University of the Nations being the sponsor of the course. It looks very much like a university catalog, a typical catalog. It lists courses, and it refers to the locations of the courses as the basis of its courses. It talks about the training of its teachers. It talks about the accreditation of its courses. If one seeks to get college credit, how it is, it explains how it is actually a university with an ability to offer credits for its courses that are transferable. And I accept what you're saying, but, again, I think we're all struggling with the fact that so far as I can tell from looking at the record, there's no evidence that your client selected a course at E-WAM Bishop because of a belief that the university controls E-WAM Bishop. Isn't that correct? No, Your Honor. Tell me where that's wrong. The question really, first of all, the district court held that University of the Nations had actually held out itself enough to give an impression that the E-WAM Bishop course was a University of the Nations course, that it was. And let's say we accept that. Yes. But the burden here is on your client to show reliance, right? Yes, Your Honor. Under California law. Yes, Your Honor. So we want to know where in the record is your client, does he clarify that he went there because he relied upon this, you know, on the mothership, if you will? Well, he says on pages 42 and 47 of the excerpt that it was important to him in enrolling that this was a course that was a University of the Nations course. That was because of the E-WAM. I mean, that's what the district court found. That was because of the E-WAM component. He was looking for E-WAM courses, and the University of Nations was known to have E-WAM courses. So that's sort of the conundrum we have. His reliance on it seems more as a referral service, not because the university was controlling these E-WAM courses. Well, he certainly thought that the University of the Nations was the party whose course it was. And our view under the record is that he very clearly said that he relied on the fact that the University of the Nations' role in accrediting the course meant that it had reviewed the course and had reviewed it periodically. He said that he relied on that? Yes. He said that the accreditation he took as an endorsement of the course by the University of the Nations gave it its authenticity, and he would not have gone to it if he had not believed that it was a University of the Nations course. So we have this California case, CII, which is somewhat JLVCII, I guess. It's somewhat similar, somewhat different. But there, again, the CII gave a list of approved family care, child care services, accredited them, reviewed them, rated them, all that. But the Court there said no agency, no ostensible agency there. Yes, Your Honor. And the ---- Aren't there some similarities to this situation where he went to University of Nations Catalog to look for E-WAM courses and then contracted separately with E-WAM Bishop? There are similarities, but there's an important difference. The Children's Institute case turned on the second element of ostensible agency, the failure of the plaintiff to establish a jury question on a reasonable belief that the child care facility in which the child was placed was an agent of the Children's Institute. In this case, the district court judge found the evidence was sufficient on that element. That is, that the evidence was sufficient for a jury to find that Yacko reasonably relied on the representation of the University of the Nations. So this is a different issue. Our issue is, did he then rely on that belief when he enrolled? And he doesn't need to have only one reason for wanting to go there. A person might want to go to a religion-sponsored school, for example, but will pick one that has a particular course of study that the individual prefers or wants to matriculate in. So our view is, clearly, under this record, a trier of fact could find that the E-WAM sponsorship was not the only reason. It was an important reason. But Yacko testified explicitly that he believed it was important that the University of Nations was the sponsor of the course itself. And it's certainly all through that catalog. It reads just like a typical university catalog in describing the various courses, saying that they had 400 sites around the world where they had 900 courses. And the DTS course, the discipleship training course that previously Yacko had attended, was one of those University of the Nations courses. So he looked directly at that catalog in attempting to find the additional outdoor wilderness training course that he was looking for, and for which the discipleship training course was a condition precedent. This certainly sounds like a typical university catalog in terms of establishing prerequisites for taking various courses. Does it make any difference that he wasn't seeking a degree? That's true. Which, of course, is immaterial, because the issue is, was he looking for something that would be a valuable course worth his money and something that would give him the kind of training that he was looking for? But you could get that from a referral service. But you could only get the degree from the university. So the question would be, if he wanted to get a degree and he wanted to get credits, then he's relying on the university's relationship with EWAM as opposed to what the district court found, which was he was only using it as a referral service. Well, the district court, we think, invaded the prerogative of the finder of fact by characterizing the reason for his selection of the University of Nations course. So it's sort of crucial that this is a summary judgment rather than something  And that's what we're saying. All you're saying is there are disputed facts here. Yes, Your Honor. Based on the briefing, as I read it, there certainly appear to be disputed facts and simply should be manned for trial. Is that what you're saying? Yes, Your Honor. That's exactly the point. Our view is that the judge invaded the jury's prerogative by taking it from the jury and saying as a matter of law the only conclusion one could draw is that he relied only on the relationship to EWAM and not to the presence and the participation of the University of the Nations in setting out this course and providing this course in its catalog with all of the attributes of the course that are described in the catalog. Thank you. Thank you. We'll hear from counsel from the university. Good morning, Judge Nelson. Good morning, Judge Yakuta and Judge Smith. Michael J. Vortain for the university. Pull the microphone closer to you. Thank you. It's YWAM. I don't want to – I just – I think it's funny, but it's YWAM standing for Youth with a Mission. So I was not mistaken. You were not mistaken. Thank you. But you are mistaken, Your Honor, that there is a – that if you do think that there is a disputed issue. Well, he says multiple times I relied on University of Nations because I wanted a – I guess a YWAM or EWAM. I wanted this sort of religious course. And so why isn't there a genuine intramaterial fact as to what the nature of the reliance was and whether the YWAM bishop had a sensible authority? The reason why there isn't – there is no genuine dispute of fact is because, A, in his response to the proposed statements of material fact that the university filed with the motion, there were three fact issues that were proposed by the university going to the why, meaning the why he enrolled with the course. It's 12, 13, and 15, and I'll cite to the record in a minute. What about your brief where you have extensive discussion as possible reading of the evidence? As I was reading that, I thought, well, this looks like disputed questions of fact from your own brief. I – you know, I disagree with that, Your Honor, but let me explain. If you read it that way, why we didn't write a good brief and why actually the order should be affirmed. Number one, there was a statement of fact proposed which said that Iaco enrolled in the course because of his reliance on its affiliation with the YWAM movement as a whole. Answer, admitted. Next fact, YWAM did not seek any university degree or diploma, and he did not enroll for that reason. Answer, admitted. Third fact was it was only after he enrolled with the course – in fact, he was beginning the course within weeks. He had already paid his tuition. The third fact was it was only then that he inquired what is the nature of the relationship between the university and the course provider, CN Summit, Wineland Bishop. But the Court properly found there could not have been reliance because that was subsequent to the decision having been made. Those three facts were all admitted, as they needed to be, because his deposition testimony said as much. The basis of the appellant's argument is, well, there could have been – I admitted that the reason – he says, I admitted a reason was the YWAM movement connection. There could have been another reason, which is the connection with the University of the Nations, which I think is your question, Your Honor. Well, he didn't say that in his deposition, and I actually asked him at his deposition, are there any other reasons, and he said, none that I can think of. That was in his deposition, and it's at Supplemental Excerpt, page 32, at line 3. Court-reported question. May I proceed with this? I think it addresses your questions, Your Honor. It isn't a question of is there conflicting evidence or credibility evidence. The only evidence on why – what the motive was for YACO to enroll would have been his statements at the time and his statements in the – in Discovery. And that's what we're looking for. Why don't you read that, and then I want to read to you from the Record 41, where he answers a question. Let me go with you first. You go first, Judge. No, I defer to you. You raised it. Okay. He had gone through the whole thing. When you read in the University of the Nations Catalog, I'm at 32, that is, Excerpt, page 32, line 5 to 10. The question was, and I asked – I actually did the deposition, and I asked it every which way I could. So here it goes, Judge. When you read in the University of the Nations Catalog that Sea and Summit, hyphen, the SOAR course was part of the University of the Nations, was that a positive factor to you because it told you that the SOAR course was part of the YWAM movement? Answer, yes. And that's the fact he admitted that what he relied on was the part of the YWAM movement. And that was Judge Akuta's comment to opposing counsel. Then going on on the same page, I asked it again, because this isn't a technicality. It's a record as a whole. And then we'll go to your page, Your Honor. Question. This is at line, again, Supplemental Excerpt 32, page 282, line 1 to 7. Quote, question. You have told me that the reason you picked the SOAR course was that it was a wilderness leadership course and that it was affiliated with the YWAM movement. And you like the YWAM movement. I think I'm boiling down your answer, but did I get it correctly? Answer, yes, that's correct. Next question, if I may, Your Honor. And the same thing is true about the references in the University of the Nations catalog. That you learned from the catalog that the University of the Nations is affiliated with the YWAM movement and that Sea and Summit is a branch or part of the YWAM movement. I'm sorry, is a branch or part of the University of the Nations. Thus, it is affiliated with the YWAM movement as well, correct? Yes. And here's where the international comes in. Yes, it was important for me that the SOAR course was part of the University of the Nations, which is part of YWAM International. Now, YWAM International has settled. You saw in the court, sort of the two of the three YWAM affiliated entities were defendants and they have settled. The bishop, which is the provider of the course, has settled and so did YWAM International. But then I ask, Your Honor, same going on, why was that important to you? That is, that it was part of the University of the Nations, which is part of YWAM International. I asked at Y19, why was that important to you? Was it because you wanted to make sure that the course was following the YWAM values and was part of the YWAM movement? Once again, he answers, yes, I was not going to subscribe to some course somewhere in California, but I had my prior experiences with DTS, that's that discipleship course, within the YWAM, and that's why I wanted another course within YWAM, because I really like the way they are doing things. May I continue? Because this is the last bit and then I'm going to go to page 42 that you want to talk about, Judge. Was there any other reason that the part of the UN Catalog that said that CNSOAR course was part of the University of the Nations courses, was that important to you for any reason other than it signaled to you that this course was following the YWAM values and part of the overall YWAM movement? Answer, yes, that was important for me. It goes on. But was your question if there are also other things which are important for me? I said, no, that wasn't my question. I went back in the court report and reread the question again. Mind you, Judge, they didn't file an affidavit. There was no declaration filed. This deposition was given three months before the motion for summary judgment. He had three counsel on the case. There was no affidavit as to clarifying. But let me get the court report and reread the question because it's important. She reread that same question. Was there any other reason that the part of the UN Catalog that said that CNSOAR, CN Summit course was part of the University of the Nations courses, was that important to you for any other reason than that it signaled to you that the course was following the YWAM values and thus was part of the overall YWAM movement? Answer, well, I don't remember if there was another specific reason. Again, so now I got it. And I was thinking, just as an aside, Your Honor, I was here in San Francisco on a video hookup and Jaco was in Holland and we could see each other and I had a counsel there. So it was 3 o'clock in the morning. So I'm proud of staying up that late. But the next question was, which is on summary. Is this the last? This is the last, Your Honor. I gave you the chance to go first, Your Honor. Do you remember? No. I just wanted to know when it was ending. Okay. And if it wasn't all about, it's only an issue that Jaco could control what the evidence was. It was his motivation. Last one. This is at Supplemental Excerpt 33, page 288 of the deposition, line 15. Question. Was it an important part, I went right to the reliance issue, Your Honor. Was it an important part of your decision making to enroll in the SOAR course at Sea and Summit to know whether Sea and Summit organization had its own board of directors, made its own decisions, and that it was separate and apart from the University of the Nations? So I'm asking him, was the control issue at all relevant to him? Answer. It wasn't part of my decision making process. That's at 23. His answer goes on and goes on a tangent. He specifically said that the agency issue was not part of his decision making process. Now, I don't know how the record could be any clearer on the reliance issue for the district judge when he found that the record reveals, and this is in his order, that YACO enrolled in SOAR not in reliance on his belief, the mistaken belief, that YWAM was an agent of the university. Well, it's because it's subscribed to, the local entity subscribed to the values of the YWAM movement. Now, the only thing I'd add, Your Honor, is, and then let's go to 42, is, again, they admitted what the reliance issue was, that it was the YWAM value. That was in the separate statement, but they never filed an affidavit or declaration from YWAM that said the agency, his beliefs as the agency, mattered in his decision. Okay. Well, I get your point, and time is running out, so I'm just going to be. Let's go to page 42. You asked me about page 42 of the excerpts, correct? At 41. He says, I was looking if there was within YWAM and within the University of the Nations a course regarding outdoor activities. He goes on to say, the question was, before you went out on the website there of the University of Nations in January 2 in Iceland and read page 5 here, did anybody affiliated with the University of the Nations, and he says, bad question, did anybody whatsoever suggest to you that in YWAM somewhere in the world there was a school of outdoor adventure and recreation, or did you basically find it out on your own by looking at the catalog? I found it out on my own. I looked at the catalog. Before you found it in the catalog, had anybody in the YWAM movement suggested to you that they thought there was such a course somewhere in the world in YWAM? I don't know, but then later on page 42, was there anything in that course description of SOAR that was in the University of Nations catalog that was important to you in making your decision in the summer of 2008 that you would involve in the SOAR movement, this goes to realize? Well, I'm pretty sure I have been reading through the first part of the catalog, and for me it was important to see that the SOAR was part of the University of Nations and the University of Nations was part of the YWAM International, which I was doing that DTS course. It goes on, well, there's a lot of death visits, page 44, page 45, where it seems to me that he's saying he did rely. He is saying, Your Honor, and counsel for the appellant was right in one part of his argument, wrong in other parts, where he said that Yako testified that it was important to him that this course was in a University of the Nations catalog, and it seemed to him that it was part of the University of the Nations. Yeah, and the district court judge found that, and the question was about control. Did he rely on the control by the University of Nations? But here is a layperson testifying again and again and again. He looked at University of Nations catalog because of YWAM. Whether or not he specifically said it would have been nicer if there had been an affidavit that he relied on the control by the University of Nations. I mean, I looked at University catalogs. I've seen millions of them, and say UCLA, and you see it in the catalog whether or not you feel that UCLA has put it in the catalog because it endorses the course or it meets certain criteria. Can I answer that question? All right. I'm taking your time, but. No, that's okay. I'm going to answer that. His saying that it was important to him that the course was part of the University of the Nations, if that was the standard for reliance, we'd be talking about a tort called ostensible connection as opposed to ostensible agency. We're talking about a tort where the reliance has to be on a belief that the one corporation controls or is responsible for the other. And he never even came close to saying that. Thank you. Thank you so much for allowing me to. Thank you very much. Counsel has some time for rebuttal. Thank you. In addition to the excerpts that have been referred to, Jaco was asked about what his understanding was of the role of University of the Nations from his reading of the catalog and his belief that the University of the Nations course was the one he wanted to sign up for. He was asked the question, what exactly do you know that the University of Nations does, this is on page 45, other than print the course in its catalog? And this goes to the issue of whether it was anything other than a yellow page service. And he said, well, the SOAR course has to be accredited by University of the Nations as it says in the first line. Question. That's why I said in my question, other than the University of the Nations gives credit for the course to certain students, what do you mean when you say orchestrated? What specific functions are you aware of that the University of the Nations does that you believe is a control of the sea and summit operation of the SOAR course? Answer from Jaco. Well, if it has to be accredited by the University of the Nations, then at least it should be reviewed by the University of the Nations. And they have to say it's good in the way it is, or they should change things. And like as an example, as far as I know, the half of the time lectures, half of the time interns face is basic in the University of the Nations way of doing things. This is additional evidence of the importance of the fact that the University of the Nations was giving this course as one of the many courses that were available for people to Does he state that fact so he reports what he inferred from reading the catalog? Does he state that was important to him? Because I think that that's opposing counsel's argument that he doesn't rely on that. Well, Your Honor, I think that's a question of fact. But he does say on page 47, talking again, he was just he was cross-examined at great length by counsel here. And repeatedly being asked why he wanted to attend SOAR. When he got to page 47 in the excerpts, he was asked, the question was, and the same thing is true about the references in the University of the Nations catalog that you learned from the catalog that the University of the Nations is affiliated with the YWAM movement and that the Sea and Summit is a branch or part of the University of the Nations, thus it is affiliated with the YWAM movement as well, correct? Yes, it was important for me that the SOAR course was part of the University of the Nations, which is part of the YWAM. Well, that's the part that opposing counsel just read where he goes on to say because it was part of YWAM. So I don't see that saying anything about reliance on the university accrediting the course or anything. Well, Your Honor, if I want to go to the University of San Francisco, for example, because of a course offering, and I look at its catalog, and I want to go to the University of San Francisco because it's a Jesuit school, that doesn't make my only reason, it may be a but-for reason, doesn't make it the only reason I want to go to that university. I want to go because I think I'm going to get a useful course for my money and a useful experience and the training that I'm looking for because it's going to be in a structured, supervised environment with competent teachers because they tell me in their catalog that that's the way they run their schools. Thank you both for your argument. The case is submitted and the Court stands adjourned for the day.
judges: Nelson, Smith, Ikuta